FILED

2022 Feb-17  PM 05:07
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **GEMSTONE FOODS, LLC et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:15-cv-02207-MHH** |
| ) | |
| **AAA FOODS ENTERPRISES, INC.** ) | |
| **et al.,** ) | |
| ) | |
|     **Defendants.** ) | |
| ) | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **MICHAEL ENSLEY et al.,** ) | |
| ) | |
|     **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **Case No.: 5:15-cv-01179-MHH** |
| ) | |
| **BEN O. TURNAGE et al.,** ) | |
| ) | |
|     **Defendants.** ) | |

<u>**MEMORANDUM OPINION – VOLUME IV**</u>

*RICO Claims*

*Section 1962(c) claim regarding the Farm Fresh scheme*

Gemstone and RCF allege that the defendants also violated § 1962(c) by
stealing Gemstone's information and documents and using them in the formation

1

and operation of Farm Fresh.  The plaintiffs claim as damages the business that they allege they lost to Farm Fresh.

The principal participants in the Farm Fresh scheme are Gary Hill, Mr. Pass, and Mr. Wester, all high-level employees of Gemstone.  Based on their relationships alone, a reasonable jury could find that Gary Hill, Mr. Pass, and Mr. Wester had a duty to disclose that they were sending themselves copies of many Gemstone documents shortly before leaving Gemstone to launch a rival business that they made plans to launch while they worked at Gemstone.  *See Allied Supply*, 585 So. 2d at 37 ("It is an agent's duty to act, in all circumstances, with due regard for the interests of his principal, and to act with the utmost good faith and loyalty.").  The number of Gemstone documents copied, the significance of those documents, and the close temporal proximity between the secreting away of the documents and the start of Farm Fresh all support a finding of a duty to disclose that Gary Hill, Mr. Pass, and Mr. Wester violated.[1]

Even so, to prevail on a RICO claim, a plaintiff must "indisputably show that a defendant's racketeering activity was more than merely a 'but for' cause of harm."

---

[1] As a reminder, not counting the documents that traveled to Farm Fresh on Mr. Wester's laptop, the record indicates that Gary Hill, Mr. Pass, and Mr. Wester obtained sales reports, (Docs. 525-33, 525-34, 525-38); UB market data, (Doc. 525-35); provider directories, customer order forms, supplier quotes, yield spreadsheets, and a bill of lading log, (Doc. 525-39); a master spreadsheet of transactions in 2014, (Doc. 525-40); load descriptions, purchase orders, and meat schedules, (Doc. 525-44); freight company contact information, (Doc. 525-45); RCF's master bill of lading, (Doc. 525-50); and Gemstone's scheduling database, (Doc. 525-51).

*Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 712 (11th Cir. 2014) (citing *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)). Here, there is an evidentiary gap between the RICO predicate act – wire fraud – and the alleged injury – loss of business. No evidence shows how Farm Fresh used the Gemstone information (not including the data copied on Mr. Wester's laptop) that Gary Hill, Mr. Pass, and Mr. Wester transmitted. In other words, from the evidence in the record, the Court cannot tell how the defendants used the information that Gary Hill, Mr. Pass, and Mr. Wester emailed to themselves. Therefore, the Court will grant the defendants' motions for summary judgment as to the § 1962(c) claim based on the Farm Fresh scheme.

### *Section 1962(c) claim regarding the Wester laptop scheme*

The plaintiffs allege that Mr. Wester violated § 1962(c) by downloading confidential Gemstone email messages and documents onto the Toshiba laptop and using those files while working for Farm Fresh.[2] The plaintiffs allege wire fraud as the RICO predicate act and stolen business as the injury.

The record demonstrates that Mr. Wester copied onto his laptop a substantial number of files and emails from Gemstone before leaving the company and joining

---

[2] Gemstone and RCF identify two components of the Wester laptop scheme: using the laptop and Gemstone documents to falsify RCF bills of lading for the PWW/Galleria scheme and using the laptop to take Gemstone's information for Farm Fresh. (*See* Doc. 454, pp. 3–4). The Court addressed the first component when analyzing the motions for summary judgment as to the PWW/Galleria scheme. This section of the memorandum opinion analyzes the second component of the alleged Wester laptop scheme.

Farm Fresh.  The record also demonstrates that the Wester laptop was used many times after the defendants formed Farm Fresh.  Several USB storage devices were plugged into the laptop, a USB storage device was plugged into the laptop right before the defendants produced the laptop, the forensic examination of the laptop revealed a collection of Gemstone documents and emails, and Mr. Wester gave inconsistent testimony about when and how often he used the laptop.  So, as with the PWW/Galleria scheme, the evidence viewed in the light most favorable to Gemstone and RCF indicates that Mr. Wester disputably violated a duty to disclose his surreptitious conduct to Gemstone and RCF.

Still, the § 1962(c) claim based on the Wester laptop scheme fails for lack of proof of causation.  The only evidence of how a defendant used the data on the Wester laptop are several Gemstone policy documents that Mr. Wester edited to serve Farm Fresh.  This evidence is not sufficient to show a genuine issue of whether the fruits of the Wester laptop wire fraud scheme proximately (and but for) caused Gemstone to lose business.  Therefore, the Court will grant the defendants' motions for summary judgment as to the § 1962(c) claim based on the Wester laptop scheme.[3]

---

[3] In granting this part of the defendants' motion for summary judgment, the Court in no way minimizes the troubling conduct of the Farm Fresh defendants.  The record shows that just before Mr. Wester shared the Toshiba laptop with the original attorneys for the defendants – see the Court's show cause order (Doc. 468, pp. 5–6) for an explanation of this terminology – someone created Word documents into which they copied Gemstone email messages and then emailed those Word documents.  (*See* Doc. 539, p. 55).  Tampering with evidence is egregious misconduct.

### Section 1962(c) claim based on money laundering

Gemstone and RCF allege a separate RICO enterprise with money laundering

as the RICO predicate act as follows:

> Each [defendant] had the common goal of starting a new business of
> Farm Fresh Foods, building a large presence in the poultry processing
> business in the United States, and profiteering to the detriment of
> Gemstone and RCF. They did this, in part, with the unlawfully obtained
> funds generated from the unlawful and illicit [invoicing,
> PWW/Galleria, Farm Fresh, and Wester laptop] schemes . . . to directly
> compete against Plaintiffs.

(Doc. 391, p. 49, ¶ 5.20; *see also* Doc. 391, pp. 53–54, 58, ¶¶ 5.26, 5.30, 5.39). In

their brief in response to the defendants' joint motion for summary judgment,

Gemstone and RCF explained:

> Carr was enriched through the Fraudulent Invoicing Scheme by 80% of
> all revenue she received from Gemstone, approximately $4.6 [m]illion
> over almost two years. This money capitalized her ability to continue
> to build the poultry business of Defendants through enhancing and
> building upon her credit limits with suppliers for the benefit of the
> Enterprise including all Defendants. The lifeblood of the Enterprise
> was and remains the credit limits capitalized by the Fraudulent
> Invoicing Scheme. . . .
>
> The Fraudulent [PWW/Galleria] Scheme resulted in the diversion from
> Gemstone to themselves by members of the Enterprise of
> approximately $774,000 in 2014 and 2015 . . . through Galleria and
> PWW, LLC . . . and was used in the operation of the Enterprise. . . .
> [T]he entire Fraudulent [PWW/Galleria] Scheme was moved back to
> Galleria, including E. Hill, just as the members were capitalizing [Farm
> Fresh] and moving forward to the detriment of Gemstone. The
> acceptance of the funds from misappropriated business was part of this
> capitalization.

> Ultimately, all Defendants further participated in a scheme of money
> laundering the proceeds of their taking of Plaintiffs' business
> opportunities.   The individual Defendants used the proceeds in the
> poultry business including paying expenses and building capital and
> then distributed the profits to the individual owners . . . .

(Doc. 526, pp. 26–27).

Money laundering in violation of either 18 U.S.C. §§ 1956 or 1957 is a RICO predicate act.  *See* 18 U.S.C. § 1961(1).  A person commits money laundering under § 1956 when he, among other things, "know[s] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity," "conducts or attempts to conduct . . . a financial transaction which in fact involves the proceeds of specified unlawful activity," and does so "with the intent to promote the carrying on of specified unlawful activity" or "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds . . . ."  18 U.S.C. § 1956(a)(1)(A)(i), (B)(i).   A person commits money laundering under § 1957 when he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity . . . ."  18 U.S.C. § 1957(a).  Here, the plaintiffs have not offered evidence showing that any defendant engaged in a transaction involving the money derived from either the Carr/AAA invoicing scheme or the PWW/Galleria scheme.

For the invoicing scheme, the "proceeds of specified unlawful activity" under the money laundering statutes are the amounts above $0.01 per pound of sourced poultry that AAA charged Gemstone and Mr. Ensley ordered Gemstone to pay. There is no evidence that those proceeds were invested in Farm Fresh. Gemstone and RCF merely speculate that they were. (*See* Doc. 422-1, p. 67, tpp. 255–57 (Mr. Turnage stating that it was "obvious" that AAA's money was used to start Farm Fresh); *but see* Doc. 422-3, p. 21, tpp. 78–79 (Eddie Hill testifying that Ms. Carr did not invest in Farm Fresh)). Jurors cannot render a verdict based on speculation. Likewise, there is no evidence that Mr. Ensley or A&M shared in the proceeds of the Carr/AAA invoicing scheme, much less evidence that Mr. Ensley or A&M invested in Farm Fresh.[4]   Therefore, the money laundering claims against Mr. Ensley, A&M, Ms. Carr, and AAA fail.

As to the PWW/Galleria scheme, there is no evidence as to what Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill did with the profits they shared. Eddie Hill paid at least $162,000 in cash to start Farm Fresh, (Doc. 422-82, p. 2), but there is no evidence that some or all of that money came from his share of Galleria. Mr. Welborn paid $100 for his 10% interest in Farm Fresh, (Doc. 422-4, p. 22, tp. 82), and Mr. Wester paid $50 for his 5% interest, (Doc. 422-8, p. 9, tp. 29), but there is

---

[4] Mr. Ensley, through A&M, provides consulting services to Farm Fresh, and Ms. Carr, through AAA, brokers poultry for Farm Fresh.

no evidence that the money came from their share of Galleria or PWW, and those amounts fall short of the $10,000 threshold in 18 U.S.C. § 1957(a). So the money laundering claims against Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill also fail.

And there is no evidence that any other defendant participated in "specified unlawful activity" under the money laundering statutes or engaged in monetary transactions involving the proceeds of "specified unlawful activity." Accordingly, the Court will grant the defendants' motions for summary judgment as to the § 1962(c) claim based on money laundering.

### *Section 1962(c) claim based on other predicate acts*

Gemstone and RCF also allege violations of the "Interstate or foreign shipments by carrier" statute, 18 U.S.C. § 659, the Travel Act, 18 U.S.C. § 1952, and the National Stolen Property Act, 18 U.S.C. § 2314, as RICO predicate acts. (Doc. 391, pp. 3–4, 47–49, 63, ¶¶ 1.3, 5.17, 5.20, 5.52). The defendants other than Mr. Wester moved for summary judgment on all RICO claims asserted against them and specifically addressed those alleged predicate acts. (*See* Doc. 414, pp. 62–65). The Court ordered the plaintiffs to respond to those defendants' motion for summary judgment and "address, for example, whether they have evidence to establish the existence of an enterprise engaged in a pattern of racketeering activity and the commission of two or more predicate crimes." (Doc. 494). In their response,

Gemstone and RCF did not address violations of 18 U.S.C. §§ 659, 1952, or 2314 as RICO predicate acts. Therefore, Gemstone and RCF have abandoned their RICO claims against the defendants other than Mr. Wester based on violations of 18 U.S.C. §§ 659, 1952, or 2314 as predicate acts. *See Resolution Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.") (citing *Rd. Sprinkler Fitters Local Union No. 669 v. Indep. Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994)).

For his part, Mr. Wester did not address 18 U.S.C. §§ 659, 1952, or 2314 specifically in his motion for summary judgment, but he did move for summary judgment on all RICO claims asserted against him, and he relied on the arguments made by his co-defendants regarding the RICO claims. (*See* Doc. 419, Doc. 420, p. 11 n.5). Gemstone and RCF did not address 18 U.S.C. §§ 659, 1952, or 2314 in their response to Mr. Wester's motion for summary judgment. (*See* Doc. 454). Therefore, Gemstone and RCF abandoned those claims against Mr. Wester.

In sum, the Court will grant the defendants' motions for summary judgment as to Count I except for the claims that Ms. Carr, AAA, Mr. Ensley, and A&M violated § 1962(c) through the invoicing scheme with mail or wire fraud as predicate acts and that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill violated § 1962(c) through the PWW/Galleria scheme with wire fraud as predicate acts.

### *RICO, 18 U.S.C. § 1962(a)*

Section 1962(a) pertains to the use of money derived from racketeering.  It

provides:

> It shall be unlawful for any person who has received any income
> derived, directly or indirectly, from a pattern of racketeering
> activity . . . to use or invest, directly or indirectly, any part of such
> income, or the proceeds of such income, in acquisition of any interest
> in, or the establishment or operation of, any enterprise which is engaged
> in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a).

As explained above, there are two genuinely disputed "pattern[s] of

racketeering activity" in this case:  the invoicing scheme and the PWW/Galleria

scheme.  Accordingly, to survive summary judgment on their § 1962(a) claim,

Gemstone and RCF must identify a genuine issue of material fact as to whether any

defendant used or invested the proceeds of those schemes.  Also, the plaintiffs must

show "an injury resulting from the use or investment of the racketeering proceeds,

rather than 'an injury resulting from the underlying racketeering enterprise itself.'"

*Bradley v. Franklin Collection Serv., Inc.*, No. 5:10-cv-01537-AKK, 2011 WL

13134961, at *6 (N.D. Ala. Mar. 24, 2011) (quoting *Fuller v. Home Depot Servs.,*

*LLC*, 512 F. Supp. 2d 1289, 1294 (N.D. Ga. 2007)); *see Danielsen v. Burnside-Ott*

*Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1229 (D.C. Cir. 1991) ("[A] plaintiff

claiming under § 1962(a) must plead and prove that his injury flowed from the

defendant's *use* or *investment* of racketeering income.  It is not sufficient to allege

injury flowing from the predicate acts of racketeering.") (emphasis in *Danielsen*); *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1369 (M.D. Fla. 2005) ("[A] majority of courts that have addressed the issue have determined that a claimant under § 1962(a) must plead an injury which stems not from the racketeering predicate acts themselves but from the use or investment of . . . racketeering income.") (internal quotation marks omitted).

As explained above, the record contains no evidence that indicates that a defendant used the proceeds of the invoicing scheme or the PWW/Galleria scheme, so Gemstone and RCF lack evidence of the "use or invest[ment]" of RICO proceeds and therefore cannot state a claim under § 1962(a).  Even if there was evidence that would allow Gemstone and RCF to establish that Ms. Carr reinvested the proceeds of the invoicing scheme into AAA to continue the invoicing scheme (this is not a stretch), or that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill reinvested the proceeds of their fraudulent bills of lading scheme into PWW and Galleria (this is unlikely because there were no expenses for the bills of lading scheme), this claim would fail because Gemstone and RCF cannot show an injury "resulting from the use or investment of the racketeering proceeds."   *Bradley*, 2011 WL 13134961, at *6.  Instead, the evidence, at best, demonstrates "'a channeling of profits' derived from racketeering acts 'back to [the] RICO violator,'" which cannot support a

11

§ 1962(a) claim.  *Bradley*, 2011 WL 13134961, at *6 (quoting *Lockheed*, 357 F. Supp. 2d at 1370–71).

Therefore, the Court will grant the defendants' motions for summary judgment as to Count II, the § 1962(a) claim.

### *RICO, 18 U.S.C. § 1962(d) Conspiracy to Violate 18 U.S.C. § 1962(a)*

Section 1962(d) makes it unlawful "for any person to conspire to violate" 18 U.S.C. § 1962(a), (b), or (c).  18 U.S.C. § 1962(d).  "Because there are fewer proof requirements under § 1962(d) than under the substantive RICO offenses—most notably, through the absence of the requirement of an overt act—the conspiracy offense reaches a wider range of conduct."  *United States v. Browne*, 505 F.3d 1229, 1263–64 (11th Cir. 2007) (citing *United States v. Harriston*, 329 F.3d 779, 785 (11th Cir. 2003)).  Accordingly, a defendant may violate § 1962(d) without "commit[ting] the substantive acts that could constitute violations" of § 1962(a), (b), or (c). *Browne*, 505 F.3d at 1264 (citing *United States v. Alonso*, 740 F.2d 862, 871–72 (11th Cir. 1984)).  "The touchstone of liability is an agreement to participate in a RICO conspiracy, which may be shown in two ways:  (1) showing an agreement on the overall objective of the conspiracy, or (2) showing that a defendant agreed to commit personally two predicate acts, thereby agreeing to participate in a 'single objective.'"  *Browne*, 505 F.3d at 1264 (quoting *United States v. Abbell*, 271 F.3d 1286, 1299 (11th Cir. 2001)).  And "[a] plaintiff need not offer direct evidence of a

RICO agreement; the existence of conspiracy 'may be inferred from the conduct of the participants.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 950 (11th Cir. 1997)).

Here, no evidence supports an inference that two or more defendants agreed to violate § 1962(a) by using or investing the proceeds of the invoicing scheme or the PWW/Galleria scheme.  Therefore, the Court will grant the defendants' motions for summary judgment as to Count III, the § 1962(d) claim that the defendants conspired to violate § 1962(a).

### RICO, 18 U.S.C. § 1962(d) Conspiracy to Violate 18 U.S.C. § 1962(c)

On the other hand, evidence viewed in the light most favorable to Gemstone and RCF supports reasonable inferences that Ms. Carr/AAA and Mr. Ensley/A&M conspired to violate § 1962(c) with the invoicing scheme, and that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill conspired to violate § 1962(c) with the PWW/Galleria scheme.  Ms. Carr/AAA and Mr. Ensley/A&M controlled the submission and payment of invoices; facilitated each other's tasks according to the scheme; were romantically involved; together assured Mr. Turnage that he should not put the cost-plus agreement in writing; and kept in regular contact.  A reasonable jury could infer from this evidence that Ms. Carr/AAA and Mr. Ensley/A&M agreed to violate § 1962(c).  Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill shared the

profits of Galleria; Mr. Wester, Mr. Pass, and Mr. Welborn shared the profits of PWW; Mr. Welborn talked to Eddie Hill and Mr. Pass, who in turn talked to Mr. Wester, about working for Mr. Lenoir; each of those defendants was involved in emails regarding falsified RCF invoices; and each of those defendants' exact roles performed for PWW and Galleria are well-established in the evidence. Reasonable jurors could infer from this evidence that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill agreed to violate § 1962(c).

The same cannot be said with respect to any other defendant. No evidence shows that any other defendant participated in, was aware of, or agreed to any part of the invoicing scheme or the PWW/Galleria scheme. Therefore, the Court will grant the defendants' motions for summary judgment as to Count IV except for the claims that Ms. Carr, AAA, Mr. Ensley, and A&M conspired to violate § 1962(c) through the invoicing scheme and that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill conspired to violate § 1962(c) through the PWW/Galleria scheme.

**DONE** and **ORDERED** this February 17, 2022.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

14