FILED

2022 Feb-26  PM 09:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **GEMSTONE FOODS, LLC et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-cv-02207-MHH** |
| | ) | |
| **AAA FOODS ENTERPRISES, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MICHAEL ENSLEY et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-cv-01179-MHH** |
| | ) | |
| **BEN O. TURNAGE et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION – VOLUME VI**</u>

**State Law Claims**

***Fraudulent Misrepresentation/Fraudulent Inducement***

Gemstone and RCF bring an Alabama state law claim for fraudulent misrepresentation or fraudulent inducement against Ms. Carr, AAA, Mr. Ensley,

1

A&M, and Eddie Hill. (Doc. 391, pp. 69–73). Gemstone and RCF allege that Ms. Carr, AAA, Mr. Ensley, and A&M committed fraud under state law for the same reasons the plaintiffs allege these defendants violated RICO through the invoicing scheme. (*See* Doc. 391, pp. 69–71, ¶¶ 5.73–5.77). The plaintiffs allege that Eddie Hill committed fraud under state law because he "failed to diligently discharge his duties to RCF and Gemstone," took actions "with the intent that Plaintiffs rely on them to Plaintiffs' detriment," made "misrepresentations and nondisclosures" as "described [in the third amended complaint]," and he "and Ensley . . . defrauded Plaintiffs as described [in the third amended complaint], including but not limited to the invoicing scheme, the Dallas USA schemes, and the creation of Farm Fresh Foods." (Doc. 391, p. 72, ¶¶ 5.79–5.80).[1]

Under Alabama law, "[t]he elements of fraud are: (1) a misrepresentation of a material fact, (2) made willfully to deceive, recklessly, without knowledge, or mistakenly, (3) that was reasonably relied on by the plaintiff under the circumstances, and (4) that caused damage as a proximate consequence." *Brushwitz v. Ezell*, 757 So. 2d 423, 429 (Ala. 2000) (citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 422 (Ala. 1997)).

---

[1] The "Dallas USA schemes" refer to Gemstone's allegation that some of the defendants wrongfully diverted $8.7 million in business from Gemstone to Dallas USA and Echo Food Group in 2013 and 2014. (*See* Doc. 391, pp. 24–25, ¶¶ 4.42–4.43). Gemstone abandoned that scheme as a basis for a RICO claim by not addressing it in response to the defendants' motions for summary judgment, but Gemstone has not abandoned the Dallas USA scheme as a basis for state law claims.

Consistent with the discussion concerning the plaintiffs' mail or wire fraud claims, evidence viewed in the light most favorable to Gemstone and RCF shows a genuine dispute of material fact as to each element of an Alabama misrepresentation and fraudulent inducement claim against Ms. Carr, AAA, Mr. Ensley, and A&M based on the invoicing scheme.

The Dallas USA scheme, pursuant to which some of the defendants allegedly diverted business from Gemstone to Dallas USA in 2013 and 2014, (Doc. 391, pp. 24–25, ¶¶ 4.42–4.43), and the Farm Fresh scheme do not involve affirmative representations of material facts. Instead, those schemes concern the defendants' alleged failure to communicate to Gemstone and RCF material facts that the defendants allegedly had a duty to disclose. Those are fraudulent suppression claims under Alabama law. The Court will address those claims next.

Therefore, the Court will grant the defendants' motions for summary judgment as to Count V except for the claim that Ms. Carr, AAA, Mr. Ensley, and A&M committed fraud under state law through the alleged invoicing scheme.

### *Fraudulent Suppression*

Gemstone and RCF allege that the defendants failed to communicate to them: "[t]he lack of checks and balances to verify invoices of Carr/AAA"; "[t]he existence of the romantic relationship between Carr and Ensley"; "[t]he diversion of business to Dallas and Echo"; "[t]he diversion of business to Galleria and PWW"; "[t]he

unlawful taking of proprietary information through the Wester laptop and electronic storage devices"; and "Ensley's real intentions in 2014 to leave Gemstone and initiate a competing business destroying the business of Gemstone." (Doc. 391, pp. 73–74, ¶ 5.84). The plaintiffs allege "millions of dollars in damages, including overbilling, lost profits, and lost business." (Doc. 391, p. 74, ¶ 5.85).

Section 6-5-102 of the Code of Alabama provides: "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Under Alabama law, to establish a claim for fraudulent suppression, a plaintiff must prove: "(1) a duty on the defendant to disclose a material fact; (2) the defendant's concealment or nondisclosure of that fact; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury." *Brushwitz*, 757 So. 2d at 431 (citing *Foremost Ins.*, 693 So. 2d at 423); *see also Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10 (Ala. 1997).

Under the first element, a defendant may have a duty to disclose material facts because of "'(1) the relationship of the parties; (2) the relative knowledge of the parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain the fact; (5) the customs of the trade; and (6) other relevant circumstances.'" *Bethel v. Thorn*, 757 So. 2d 1154, 1162 (Ala. 1999) (quoting *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834, 842–43 (Ala. 1998)). "'When one party has superior

knowledge of a fact that is unknown to the other party, and the lack of knowledge will induce the other party to act in a manner in which he otherwise might not act, the obligation to disclose is "particularly compelling."'" *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1192 (Ala. 2008) (quoting *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So. 2d 1292, 1296 (Ala. 1995)).

Here, the evidence supports the plaintiffs' fraudulent suppression claim against Ms. Carr, AAA, Mr. Ensley, and A&M. Based on the previously-discussed evidence concerning the RICO § 1962(c) claim, reasonable jurors could conclude that Ms. Carr and Mr. Ensley owed Gemstone and RCF a duty to disclose material facts because Mr. Ensley was Gemstone's president, Ms. Carr was its primary supplier/broker, Ms. Carr and Mr. Ensley convinced Mr. Turnage to trust them, and information concerning the romantic relationship between Ms. Carr and Mr. Ensley and overbilling, if proven, was important to Gemstone. Likewise, reasonable jurors could conclude that Ms. Carr and Mr. Ensley concealed their romantic relationship, Ms. Carr concealed AAA charges that exceeded $0.01 per pound of poultry, and Mr. Ensley shielded the AAA invoices from review by pressing Gemstone to pay the invoices quickly. Jurors also could conclude that the concealments induced Gemstone to select AAA as the company's poultry broker and pay AAA's inflated invoices and that the concealments caused Gemstone to lose the money it allegedly overpaid to AAA. Therefore, genuine disputes of material fact exist as to each

element of a fraudulent suppression claim against Ms. Carr, AAA, Mr. Ensley, and A&M.

Similarly, based on the previously-discussed evidence concerning the Galleria/PWW RICO § 1962(c) claim, reasonable jurors could find that Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill, because of their positions with Gemstone and the importance of the information, owed Gemstone and RCF a duty to disclose, among other things, that they were using falsified RCF bills of lading to conduct unusual two-to-three minute inspections of chicken shipments for Mr. Lenoir under suspicious circumstances and that one of their inspections of a Canebrake load of poultry caused RCF to be associated with a Canadian customs/USDA investigation. Jurors also could conclude that the concealments caused Gemstone not to restrict the PWW/Galleria defendants' access to the RCF documents used to perpetuate the fraud or take other measures to protect RCF's reputation and the company's USDA authorization. Therefore, there are genuine disputes of material fact as to each element of a fraudulent suppression claim against Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill.

Mr. Ensley's diversion of Tyson portioning business to Dallas USA before RCF began operating is not actionable because the diversion was not material and did not harm Gemstone and RCF. Rather, the diversion helped Gemstone secure Tyson's significant business before RCF had the permits, equipment, and personnel

the company needed to process orders for Tyson.  There is no evidence that, after RCF became operational, Mr. Ensley diverted business to Dallas that RCF was capable of handling.  Once RCF was able to portion chicken, Mr. Ensley sent Tyson business to Dallas to meet Tyson's needs only when RCF could not.

Because neither Mr. Ensley nor the managerial defendants had non-compete agreements with Gemstone or RCF, none of those defendants had a duty to disclose their plans to operate a competing portioning business after they left Gemstone. Therefore, a suppression claim concerning the formation of Farm Fresh fails as a matter of law.  Therefore, the Court will grant the defendants' motions for summary judgment as to Count VI except for the claim that Ms. Carr, AAA, Mr. Ensley, A&M, Mr. Wester, Mr. Pass, Mr. Welborn, and Eddie Hill fraudulently suppressed material information from Gemstone and RCF in violation of Ala. Code § 6-5-102.

### Contract and Unjust Enrichment Claims

Gemstone and RCF bring breach of contract and unjust enrichment claims against Ms. Carr and AAA, (Count IX), and Mr. Ensley and A&M, (Count X).  (Doc. 391, pp. 85–86).  The plaintiffs allege that Ms. Carr and AAA breached the cost-plus agreement by invoicing Gemstone for amounts greater than $0.01 per pound of poultry for Ms. Carr's brokerage services sourcing the poultry.  (Doc. 391, p. 85, ¶¶ 5.113–5.114).  The plaintiffs allege that Mr. Ensley's actions "as described [in the third amended complaint] are in violation of his duties as an officer and employee

of RCF and Gemstone and constitute a direct breach of his employment contract." (Doc. 391, p. 86, ¶ 5.116).

Under Alabama law, "[t]he elements of a breach-of-contract claim are: (1) the existence of a valid contract binding upon the parties in the action, (2) the plaintiff's own performance; (3) the defendant's nonperformance, or breach, and (4) damage." *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001) (citing *Emps.' Benefit Ass'n v. Grissett*, 732 So. 2d 968, 975 (Ala. 1998)).

As the Court has discussed, genuine disputes of material fact regarding the existence and validity of the oral cost-plus agreement and Ms. Carr/AAA's nonperformance by allegedly invoicing Gemstone more than the cost of the poultry plus $0.01 for Ms. Carr's services preclude summary judgment on the plaintiffs' breach of contract claim against Ms. Carr/AAA.  Gemstone performed under the cost-plus agreement by paying AAA's invoices through November of 2014 when Gemstone detected what it perceives as overcharges.  If jurors resolve the parties' factual disputes in Gemstone's favor, then the amount of the alleged overpayments would constitute Gemstone's damages.  Therefore, the Court will deny the defendants' motion for summary judgment as to the breach of contract claim against Ms. Carr and AAA.

With respect to the breach of contract claim against Mr. Ensley/A&M, the Court understands that Gemstone and RCF contend generally that Mr. Ensley's

8

involvement in the AAA invoicing scheme and his defection to Farm Fresh as a consultant through his company A&M breached his employment contract with Gemstone.  The only written employment document between Mr. Ensley and Gemstone that appears in the record is a memorandum dated January 22, 2014 labeled an "Executive Compensation Outline."  (Doc. 428-3, p. 3).  That memorandum describes Mr. Ensley's compensation going forward; the memorandum does not address Mr. Ensley's initial year as Gemstone's president, and the memorandum does not describe Mr. Ensley's duties as president of Gemstone.  Therefore, Gemstone and RCF's breach of contract claim against Mr. Ensley/A&M based on an employment agreement fails.  Therefore, the Court will grant the defendants' motion for summary judgment as to the breach of contract claim against Mr. Ensley and A&M.

As to the plaintiffs' alternative unjust enrichment theory, "[t]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that:  (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation."  *Portofino Seaport Vill., LLC v. Welch*, 4 So. 3d 1095, 1098 (Ala. 2008) (citing *Am. Family Care, Inc. v. Fox*, 642 So. 2d 486, 488 (Ala. Civ. App. 1994)).  Under Alabama law, a viable breach of contract claim precludes an unjust enrichment claim regarding the same subject matter.  *See Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447

(Ala. 1996) ("[U]nder Alabama law, claims of both an express and an implied contract on the same subject matter are generally incompatible.  This Court has recognized that where an express contract exists between two parties, the law generally will not recognize an implied contract regarding the same subject matter.") (collecting cases).

Here, the existence and enforceability of the Carr/AAA cost-plus agreement is disputed, so Alabama law does not preclude the plaintiffs' unjust enrichment claim against Ms. Carr/AAA.  Reasonable jurors could credit the defendants' arguments and find that the cost-plus agreement did not exist or is unenforceable, but jurors also could conclude that Ms. Carr agreed verbally that she would charge Gemstone $0.01 per pound of poultry sourced, that she invoiced Gemstone for more than $0.01 per pound, and that Gemstone paid the overcharges at Mr. Ensley's direction. Therefore, the Court will deny the Carr/AAA summary judgment motion on Gemstone and RCF's unjust enrichment claim.  *See Kennedy*, 682 So. 2d at 447 (finding that the trial court properly submitted both express contract and implied contract theories to the jury because the defendant disputed the existence of an express contract).

Gemstone and RCF have not included in their complaint factual allegations that suggest that Mr. Ensley (or A&M) received from Gemstone payments to which he (it) was not entitled.  Therefore, the Court will grant the defendants' motion for

summary judgment as to the unjust enrichment claim against Mr. Ensley and A&M. *See White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1200 (11th Cir. 2015) ("'A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.'") (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).[2]

### Civil Conspiracy

Gemstone and RCF allege that the defendants mutually agreed to engage in the wrongdoing alleged in this case and therefore formed a civil conspiracy in violation of Alabama law. (Doc. 391, pp. 88–89). To succeed on a civil conspiracy claim under Alabama law, a plaintiff "must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000) (citing *McLemore v. Ford Motor Co.*, 628 So. 2d 548 (Ala. 1993)). "'The gist of an action alleging civil conspiracy is not the conspiracy itself but, rather, the wrong committed.'" *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) (quoting *Keith v. Witt Auto Sales, Inc.*, 578 So. 2d 1269, 1274 (Ala. 1991)). "'[I]f the underlying wrong provides no cause of action, then neither does the

---

[2] In response to Mr. Ensley's contention that Gemstone owes him bonus payments, Gemstone has argued that Mr. Ensley's bonus payments in 2014 were inflated because those bonuses were based on net income, (Doc. 428-3, p. 3), and Gemstone's net income in 2014 was overstated in the amount of the $1.3 million in AAA invoices that Ms. Carr belatedly submitted for payment in late 2014. In their third amended complaint, Gemstone and RCF have not asserted a breach of contract claim or an unjust enrichment claim against Mr. Ensley based on the alleged bonus overpayment.

conspiracy.'"  *Ex parte Ala. Dep't of Transp.*, 764 So. 2d 1263, 1271 (Ala. 2000) (quoting *Jones v. BP Oil Co.*, 632 So. 2d 435, 439 (Ala. 1993)).

Here, because Gemstone and RCF may proceed with several of their state law claims, including their misrepresentation and suppression claims, and because those claims may support a civil conspiracy claim, the Court will deny the defendants' summary judgment motion as to the civil conspiracy claim as it relates to several defendants.  As explained with respect to the plaintiffs' RICO conspiracy claim, reasonable jurors could find that Ms. Carr/AAA and Mr. Ensley/A&M worked in concert to enable AAA to breach the cost-plus agreement and conceal the fact that Ms. Carr was charging more than $0.01 per pound for sourcing poultry for RCF to portion.  The Court will not repeat the analysis concerning the PWW/Galleria scheme, but it too may serve as the basis for the plaintiffs' civil conspiracy claim.

None of the underlying state law claims that survive relate to Ms. Campos, Gary Hill, or Farm Fresh.  There is no evidence supporting a reasonable inference that Ms. Campos, Garry Hill, or Farm Fresh agreed to other defendants' unlawful purposes, acted in concert with other defendants to breach a duty that they owed to the plaintiffs, or were otherwise complicit in a scheme.  So, the Court will deny the

motions for summary judgment on Count XII except as to Ms. Campos, Gary Hill, and Farm Fresh.[3]

### *Wantonness*

Gemstone and RCF allege that the conduct of Mr. Ensley/A&M and Ms. Carr/AAA was "so outrageous, extreme, willful, intentional, and/or without regard to the right of Plaintiffs as to be found wanton and reckless" under Alabama law. (Doc. 391, p. 90, ¶ 5.134; *see also* Doc. 371, p. 3).[4]  Under Alabama law, conduct is wanton when it is "carried on with a reckless or conscious disregard of the rights or safety of others."  Ala. Code § 6-11-20(b)(3).  To prove the tort of wantonness, a plaintiff must present evidence of "the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result."  *Alfa Mut. Ins. Co. v. Roush*, 723 So. 2d 1250, 1256 (Ala. 1998) (citing *Bozeman v. Cent. Bank of the S.*, 646 So. 2d 601 (Ala. 1994)).  "If there is any evidence from which a jury can reasonably infer wantonness, the issue should be presented to the jury."  *Sellers*

---

[3] Like Mr. Wester and other managerial defendants, Gary Hill downloaded Gemstone proprietary information in the months before he left Gemstone to join Farm Fresh, but, as the Court will explain, Gemstone and RCF have not asserted a colorable claim against Gary Hill or the other managerial defendants concerning the use of Gemstone's proprietary information.  Therefore, the plaintiffs cannot maintain a conspiracy claim against Gary Hill.

[4] In Document 371, the plaintiffs voluntarily narrowed their wantonness claim by indicating that they were pursuing the claim only as to four defendants, Mr. Ensley, A&M, Ms. Carr, and AAA.

*v. Sexton*, 576 So. 2d 172, 175 (Ala. 1991) (citing *McDougle v. Shaddrix*, 534 So. 2d 228 (Ala. 1988)).

Here, reasonable jurors could conclude that the defendants consciously violated several duties encompassed in Gemstone's state law claims, knowing that doing so would injure Gemstone and RCF.  Therefore, the Court will deny the defendants' motions for summary judgment as to Count XIV as it pertains to Mr. Ensley/A&M and Ms. Carr/AAA.

**DONE** and **ORDERED** this February 26, 2022.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE