FILED
2022 Feb-28  PM 04:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| GEMSTONE FOODS, LLC et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 5:15-cv-02207-MHH |
| ) | |
| AAA FOODS ENTERPRISES, INC. ) | |
| et al., ) | |
| ) | |
|     Defendants. ) | |

___

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| MICHAEL ENSLEY et al., ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | Case No.: 5:15-cv-01179-MHH |
| ) | |
| BEN O. TURNAGE et al., ) | |
| ) | |
|     Defendants. ) | |

## <u>MEMORANDUM OPINION – VOLUME VII</u>

### IV.

*Analysis of the Plaintiffs' Motions for Summary Judgment*

### *Mr. Ensley/A&M's Direct Claims in Case 15-1179*

In case 15-1179, Mr. Ensley and A&M assert claims against Gemstone, RCF, and Gemstone Holdings, LLC under theories of breach of contract, quantum meruit, unjust enrichment, and civil conspiracy. (*See* 15-1179, Doc. 1).[1] For each claim, Mr. Ensley alleges that Gemstone refused to pay him his salary for November 15–30, 2014, his monthly bonus payments for October and November 2014, and the full amount of his executive savings plan. (*See* 15-1179, Doc. 1, pp. 13–14, ¶¶ 70, 76, 78). Gemstone contends that it paid Mr. Ensley all compensation due. (Doc. 429, p. 2). Gemstone, RCF, and Gemstone Holdings have moved for judgment in their favor on Mr. Ensley/A&M's claims. (Doc. 424; Doc. 428).

Mr. Ensley's compensation agreement for 2014 included a $325,000 salary and monthly bonuses.[2] In addition, Mr. Ensley allegedly was entitled to "10% of the consolidated net (after tax) annualized profit [] to be allocated via Employment Contract for the Executive Saving Plan on an annual basis . . . ." (Doc. 428-3, p.

---

[1] Initially, in case 15-1179, Mr. Ensley and A&M asserted a host of claims against several defendants, including a claim for breach of the covenant of good faith and fair dealing. (15-1179, Doc. 1). Mr. Ensley and A&M have voluntarily dismissed their claims against all defendants other than Gemstone, RCF, and Gemstone Holdings, and Mr. Ensley and A&M have voluntarily dismissed their breach of the covenant of good faith and fair dealing claim against all defendants. (Doc. 446, p. 2).

[2] Initially, Mr. Ensley and Mr. Turnage agreed to 6% bonuses, but in April 2014, they agreed to increase the bonuses to 10%. (Doc. 428-27, p. 3; Doc. 429, p. 11).

2

3).  The parties agree that Mr. Ensley was entitled to 11 months' worth of his salary in 2014 because he worked through the end of November 2014.  (Doc. 429, p. 8; Doc. 446, p. 4).  Mr. Ensley's final paycheck covers his work through November 15, 2014.  (Doc. 428-15, p. 2).  A jury must decide whether Gemstone should have paid Mr. Ensley through the end of November 2014.[3]

A jury also must decide whether Gemstone owes Mr. Ensley bonus payments.  Gemstone paid Mr. Ensley bonuses through October 2014 but did not pay him a bonus in November 2014.  (Doc. 429, p. 10; Doc. 446, pp. 7, 10; *see* Doc. 428-26).  A jury must decide whether Mr. Ensley may receive a bonus for November 2014 and, if so, how much the bonus should be.

With respect to the Executive Savings Plan, Mr. Ensley acknowledges that the parties discussed formalizing the memorandum which states that Gemstone agreed to allocate "10% of the consolidated net (after tax) annualized profit" for the Executive Savings Plan, but Mr. Ensley contends that the parties' failure to follow through is irrelevant because the memorandum describing the Savings Plan suffices to bind Gemstone.  (Doc. 446, pp. 11–13).  A jury must decide whether there was a meeting of the minds with respect to the Savings Plan, and, if so, how

---

[3] The plaintiffs contend that Gemstone paid Mr. Ensley's salary through the end of November 2014 because he received $297,916.23 in payroll checks in 2014. (Doc. 429, pp. 5–8). Eleven twelfths of $325,000 is $297.916.67.  The final paycheck Gemstone issued to Mr. Ensley on December 30, 2014, (Doc. 428-16), covered unused vacation time.  (Doc. 429, p. 8). Reasonable jurors, therefore, could find that Gemstone still owes Mr. Ensley part of his salary.

much Mr. Ensley may recover under the plan. Alternatively, Mr. Ensley seeks to recover under the Savings Plan via the equitable principles of *quantum meruit* and unjust enrichment.

Therefore, Mr. Ensley/A&M's direct claims for compensation in case 15-1179 survive the motion for summary judgment filed by Gemstone, RCF, and Gemstone Holdings.

### *2. Ms. Carr/AAA's Counterclaims in Case 15-2207*

In their answer to the plaintiffs' third amended complaint, Ms. Carr and AAA assert counterclaims against Gemstone and RCF for breach of contract, unjust enrichment, quantum meruit, and violation of the Alabama Sales Representative's Commission Contract Act. (Doc. 521, p. 33; Doc. 394, pp. 36–42). Each claim concerns Ms. Carr's and AAA's contention that Gemstone refused to pay her fully in late 2014 and early 2015 for services she rendered under the $0.005/$0.02 brokerage agreement.

Gemstone and RCF contend that they are entitled to judgment as a matter of law on these claims because the $0.005/$0.02 agreement was either unenforceable under the statute of frauds or did not provide compensation for sales. (Doc. 427, p. 3). The arguments are not persuasive. The UCC statute of frauds does not bar Ms. Carr/AAA's counterclaims. Ms. Carr's $0.005/$0.02 agreement with Gemstone was for brokerage services, and, as the Court has

4

explained, the evidence supports a reasonable inference that a contract for Ms. Carr's brokerage services is a contract for services with goods incidentally involved and therefore is not governed by the UCC. (*See* Memorandum Opinion – Volume II, Doc. 540, pp. 6–9).

Viewed in the light most favorable to Ms. Carr and AAA, the evidence would support a jury finding that Gemstone agreed to pay Ms. Carr $0.02 per pound of portioned chicken that she sold for Gemstone. Ms. Carr's sworn declaration to that effect, (Doc. 238-2, p. 6, ¶ 21), creates a genuine issue for trial. *See Sconiers*, 946 F.3d at 1263; *Feliciano*, 707 F.3d at 1252–53. Additionally, on December 11, 2014, Gary Hill sent Ms. Carr and Kevin Wilson, Gemstone's senior accountant, an email with the subject line ".02 / Lb Commission for Direct Purchases to AAA Foods." (Doc. 422-67, p. 3). In the email, Gary Hill calculated a $43,683.71 commission by multiplying $0.02 with 2,184,185.37 pounds of chicken received "[s]ince [Gemstone] started direct purchases." (Doc. 422-67, p. 3). On December 12, 2014, Gary Hill sent Ms. Carr a message in which he stated: "I think it is only suppose[d] to be .005 per pound." (Doc. 422-68, p. 2). Ms. Carr responded, ".02 on sales side and .005 purchasing." (Doc. 422-68, p. 2).[4]

---

[4] Gemstone and RCF have cited evidence that, according to them, contradicts an agreement to pay Ms. Carr/AAA for sales. (Doc. 427, pp. 24–26) (citing Doc. 422-1, pp. 48–49, tpp. 181–83; Doc. 426-2, p. 2; Doc. 426-4; Doc. 426-5). A jury will weigh the evidence.

5

Therefore, the Court will deny the plaintiffs' motion for summary judgment as to Ms. Carr/AAA's counterclaims.

**DONE** and **ORDERED** this February 28, 2022.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE