FILED

2022 May-06  PM 12:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GEMSTONE FOODS, LLC et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-cv-02207-MHH** |
| | ) | |
| **AAA FOODS ENTERPRISES, INC. et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **MICHAEL ENSLEY et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 5:15-cv-01179-MHH** |
| | ) | |
| **BEN O. TURNAGE et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiffs have asked the Court to reconsider several rulings on the parties' motions for summary judgment. (Doc. 565). For the reasons stated below, the Court will reinstate the plaintiffs' claims for breach of loyalty and fraudulent suppression

1

against the Gemstone employees who engaged Mike Ensley to recruit customers for Farm Fresh while the employees still held managerial positions at Gemstone.

## I.

Pursuant to Federal Rule of Civil Procedure 54(b), when an action involves multiple claims or multiple parties, "the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay." Fed. R. Civ. P. 54(b). If a court does not certify a partial final judgment under Rule 54(b), "any order or decision" which "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b). In other words, "an interlocutory order is subject to reconsideration at any time prior to entry of final judgment." *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1242 (11th Cir. 2011) (citing *Harper v. Lawrence Cty.*, 592 F.3d 1227, 1231 (11th Cir. 2010)). A motion to revise an interlocutory order "is not subject to the limitations of Rule 59." *Toole v. Baxter Healthcare Corp.*, 235 F.3d 1307, 1315 (11th Cir. 2000) (quoting *Gallimore v. Mo. Pac. R.R. Co.*, 635 F.2d 1165, 1171 (5th Cir. Unit A Feb. 1981)). The Eleventh Circuit reviews a district court's alteration of an interlocutory order for abuse of discretion. *See Harper*, 592 F.3d at 1231–32 (citing *Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC*, 253

Fed. Appx. 861, 863 (11th Cir. 2007); *see also Region 8 Forest Serv. Timber Purchasers Council v. Alcock*, 993 F.2d 800, 805–06 (11th Cir. 1993).

The Advisory Committee Notes to Rule 60 of the Federal Rules of Civil Procedure, the rule that governs relief from final orders and judgments, distinguishes the standard for Rule 60 from the standard under Rule 54(b): "The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief; and hence interlocutory judgments are not brought within the restrictions of the rule, but rather they are left subject to the complete power of the court rendering them to afford such relief from them as justice requires." FED. R. CIV. P. 60 Advisory Committee Notes, 1946 Amendment, Subdivision (b); *see Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) ("Under Rule 54(b), the trial court is free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.") (quoting *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017)); *Cobell v. Jewell*, 802 F.3d 12, 25 (D.C. Cir. 2015) ("In contrast [to Rule 59(e)], Rule 54(b)'s approach to the interlocutory presentation of new arguments as the case evolves can be more flexible, reflecting the 'inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.'") (quoting

*Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir. 1985) (Breyer, J.)).

Because Gemstone and RCF ask the Court to reconsider its analysis of the defendants' motions for summary judgment, the Court considers the evidence in the light most favorable to Gemstone and draws inferences from the evidence in Gemstone's favor. *See Sconiers v. Lockhart*, 946 F.3d 1256, 1263 (11th Cir. 2020) (citing *Allen v. Bd. of Pub. Educ. for Bibb Cty.*, 495 F.3d 1306, 1315 (11th Cir. 2007)).

## II.

The unusual procedural posture of this case counsels in favor of the Court's review of its summary judgment analysis of the plaintiffs' state law claims. As the Court noted in its summary judgment opinion, the parties filed a total of six motions for summary judgment in these consolidated cases. (Doc. 579, p. 3). To manage the briefing and resolve the extensive motions before a mediation with Judge Ott, the Court issued party-specific—and in some instances claim-specific—briefing orders. The Court did not ask counsel for the plaintiffs to submit a summary judgment brief concerning the plaintiffs' state law claims against the defendants other than Mr. Wester.[1] Consequently, the plaintiffs' motion to alter summary judgment rulings

---

[1] Gemstone and RCF responded to Mr. Wester's summary judgment motion and addressed his arguments concerning their state law claims. Gemstone and RCF focused their opposition on arguments concerning the Wester laptop and the PWW cross-docking scheme. (Doc. 454, pp. 51–

contains the plaintiffs' first summary judgment arguments regarding their state law claims against the managerial defendants and the evidence relevant to those claims. The Court has considered those arguments and the defendants' response.

## III.

Under Alabama law, general principles of agency provide that an agent owes his principal a duty of loyalty to act "with due regard to the interest of the principal. In accepting the agency [an agent] impliedly undertakes to give his principal his best care and judgment, and to use the powers conferred upon him for the sole benefit of his principal consistent with the purposes of the agency." *Edwards v. Allied Home Mortg. Capital Corp.*, 962 So. 2d 194, 210 (Ala. 2007) (quoting *Dudley v. Colonial Lumber Co.*, 137 So. 429, 431 (Ala. 1931)). An agent must, "in all circumstances," act "with due regard for the interests of his principal, and [] act with the utmost good faith and loyalty." *Allied Supply Co. v. Brown*, 585 So. 2d 33, 37 (Ala. 1991) (citing *Williams v. Williams*, 497 So. 2d 481 (Ala. 1986)). "Implicit in this duty is an obligation not to subvert the principal's business by luring away customers or employees of the principal, or to otherwise act in any manner adverse to the principal's interest" while employed by the principal. *Allied Supply Co.*, 585 So. 2d

---

58). Gemstone and RCF did not discuss in that opposition the conduct of the other managerial defendants who allegedly breached their duty of loyalty to Gemstone and RCF and committed fraudulent suppression.

at 37 (citing *Naviera Despina, Inc. v. Cooper Shipping Co.*, 676 F. Supp. 1134 (S.D. Ala. 1987)).

To succeed on a claim for breach of the duty of loyalty, a plaintiff must prove that a duty exists between the plaintiff and the defendant, that the defendant breached that duty, and that the plaintiff incurred damages as a result. *Aliant Bank, a Div. of USAmeribank v. Four Star Invs., Inc.*, 244 So. 3d 896, 907 (Ala. 2017) (citing *Regions Bank v. Lowrey*, 101 So. 3d 210, 219 (Ala. 2012)).

Because Gemstone did not have non-compete agreements with the Gemstone employee defendants, a breach of duty claim relating to those employees' alleged solicitation of Gemstone employees, vendors, and customers may span only the brief window of time when the managerial employees took steps to launch Farm Fresh while they were employed at Gemstone. That window is no more than a few months—and a shorter period for some defendants who left Gemstone earlier than others. By itself, that short period of time does not warrant summary judgment for the defendants. *Allied Supply Co.*, 585 So. 2d at 34–35, 37 (denying summary judgment on breach of loyalty claim against managerial employees for conduct that occurred over six-week period).

Viewing the evidence in the light most favorable to Gemstone and RCF, Mr. Welborn and Eddie Hill first discussed the possibility of creating a new processing company in December 2014, and the Gemstone employees who founded Farm Fresh

6

became owners of Farm Fresh in January 2015, a month or so before most of them left Gemstone.  The Court has not located evidence from which jurors could infer that, while they were employees of Gemstone, Mr. Welborn, Mr. Pass, Mr. Wester, Gary Hill or Ms. Campos solicited Gemstone employees to go to work for Farm Fresh.  Thus, Gemstone and RCF cannot maintain a breach of duty claim against the managerial employees on that basis.[2]

Gemstone and RCF have identified evidence from which reasonable jurors could conclude that the managerial defendants engaged Mr. Ensley to recruit customers like Tyson, a significant Gemstone customer, as Farm Fresh customers before the managerial employees left Gemstone.  The record demonstrates that after Mr. Ensley left Gemstone, between December 2014 and March 2015, he began "setting up a customer base for farm fresh [sic]" by "prenotif[ying] [] specific customers" of "start-up dates."  (Doc. 525-55, pp. 1–2).  To accomplish the work for the new company, Mr. Ensley travelled 18,000 miles over four months.  (Doc. 525-55, p. 2).[3]  It is undisputed that Mr. Ensley did not become an owner of Farm Fresh,

---

[2] In their motion to alter, Gemstone and RCF list several managers who purportedly resigned from Gemstone between February 2015 and March 2015.  The plaintiffs do not cite evidence to support the allegations, and the plaintiffs have not provided evidence that indicates that the non-party managers who purportedly resigned from Gemstone became Farm Fresh employees.  (Doc. 565-1, pp. 18–19).  Therefore, Gemstone and RCF have not offered evidence to overcome the managerial defendants' motion for summary judgment as it pertains to recruitment of Gemstone employees.

[3] Mr. Ensley testified that he incurred those miles consulting for Tyson, Raising Cane, and Dallas USA.  (Doc. 422-18, p. 62, tpp. 242–43).  Jurors may believe or disbelieve Mr. Ensley's testimony,

so he was not recruiting customers for a company that he owned (which he was free to do because he did not sign a non-compete agreement); he was recruiting "a customer base for farm fresh," the company that the managerial employees owned as of January 2015.  While Mr. Ensley was notifying customers of Farm Fresh's start-up dates, in January 2015, using the email address from which Mr. Ensley requested payment for his efforts to set up Farm Fresh's customer base, Mr. Pass copied Mr. Ensley on messages to the managerial defendants to which Mr. Pass attached Gemstone schedules and work orders.  (Docs. 565-13 through 565-20; Doc. 525-55, p. 1).  Jurors could conclude that Mr. Ensley used the information in these reports to help him pre-notify potential Farm Fresh customers.  John LaCour of Tyson testified that Mr. Ensley communicated to him that he and "some of the key people" at Gemstone, namely the team who had worked with Mr. Ensley at Diamond Foods before moving to Gemstone, were leaving Gemstone.  (Doc. 422-16, p. 23, tp. 88).  Mr. LaCour stated that after Mr. Ensley left Gemstone, Tyson sent business to Farm Fresh that otherwise would have gone to Gemstone.  (Doc. 422-16, p. 22, tpp. 83–84).[4]

---

taking into account, for example, his written representation to Mr. Welborn that he (Mr. Ensley) incurred 18,000 of the total 24,000 miles that he traveled over four months for "your company," meaning Farm Fresh.  (Doc. 525-55, p. 2).

[4] In its initial opinion, the Court noted that Mr. Turnage was confident that Farm Fresh took Gemstone customers, including Tyson and Koch, but because he "was not at the table when the deals were cut," (Doc. 422-1, p. 67, tp. 257), he presumably did not know when the defendants struck deals with Gemstone's customers.  Therefore, jurors would be left to speculate about

The managerial defendants argue that, even if Gemstone and RCF can demonstrate that Mr. Ensley contacted potential customers on behalf of the managerial defendants while those defendants still worked at Gemstone, Gemstone and RCF cannot establish damages that the companies allegedly suffered as a result. The defendants argue that "the undisputed testimony is that Gemstone did not lose any customers or business to Farm Fresh." (Doc. 577, p. 8). But, as noted, Mr. LaCour testified that Tyson moved business to Farm Fresh that otherwise would have gone to Gemstone. (Doc. 422-16, p. 22, tpp. 83–84; *see also* Doc. 422-12, p. 42, tpp. 156–57) (explaining that Gemstone sales volume to Tyson fell in 2015 as compared to the previous year after Farm Fresh began operating).

Ultimately, Gemstone and RCF may struggle to tie one or two months of conduct to specific profits lost because the managerial defendants—viewing the evidence in the light most favorable to Gemstone—had Mr. Ensley recruit Gemstone customers for Farm Fresh between December 2014 and March 2015, but Gemstone's evidence of a breach of the duty of loyalty may support an award of nominal damages. *Welch v. Evans Bros. Constr. Co.*, 66 So. 517, 552 (Ala. 1914) ("[I]t may not be inappropriate to call attention to the fact that where there is, in an action of

---

possible breaches of the managerial defendants' duties of loyalty as that claim relates to recruitment of Gemstone customers while the managerial employees still worked for Gemstone. The documentary and testimonial evidence that the Court discusses in this opinion removes the timing issue from the realm of speculation.

tort, a breach of duty shown, and the amount of the injury resulting from it is not shown, nominal damages are proper."); *see also L.A. Draper & Son, Inc. v. Wheelabrator-Frye, Inc.*, 813 F.2d 332, 338 (11th Cir. 1987) (explaining that under Alabama law, "where an agent breaches his fiduciary duty, his employer is entitled to nominal damages even where there is a failure of proof regarding actual damages"). And "an award of nominal damages may support an additional award of punitive damages" under Alabama law. *Raley v. Royal Ins. Co.*, 441 So. 2d 916, 918 (Ala. Civ. App. 1983) (citing *Walker v. Cleary Petroleum Corp.*, 421 So. 2d 85, 88 (Ala. 1982)).

The managerial defendants' duty of loyalty impacts not only the plaintiffs' claim for breach of that duty but also the plaintiffs' suppression claim against the managerial defendants. Under Alabama law, "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Alabama Code § 6-5-102. Under Alabama law, to establish a claim for fraudulent suppression, a plaintiff must prove: "(1) a duty on the defendant to disclose a material fact; (2) the defendant's concealment or nondisclosure of that fact; (3) inducement of the plaintiff to act; and (4) action by the plaintiff to his injury." *Brushwitz v. Ezell*, 757 So. 2d 423, 431 (Ala. 2000)

(citing *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 423 (Ala. 1997)); *see also*
*Booker v. United Am. Ins. Co.*, 700 So. 2d 1333, 1339 n.10 (Ala. 1997).

Under the first element, a defendant may have a duty to disclose material facts
because of "(1) the relationship of the parties; (2) the relative knowledge of the
parties; (3) the value of the particular fact; (4) the plaintiff's opportunity to ascertain
the fact; (5) the customs of the trade; and (6) other relevant circumstances." *Bethel*
*v. Thorn*, 757 So. 2d 1154, 1162 (Ala. 1999) (quoting *State Farm Fire & Cas. Co.*
*v. Owen*, 729 So. 2d 834, 842–43 (Ala. 1998)). "[W]hen one party has superior
knowledge of a fact that is unknown to the other party, and the lack of knowledge
will induce the other party to act in a manner in which he otherwise might not act,
the obligation to disclose is particularly compelling." *Flying J Fish Farm v. Peoples*
*Bank of Greensboro*, 12 So. 3d 1185, 1192 (Ala. 2008) (quoting *Liberty Nat'l Life*
*Ins. Co. v. McAllister*, 675 So. 2d 1292, 1296 (Ala. 1995)) (internal quotations
omitted).

Here, viewing the evidence in the light most favorable to the plaintiffs, during
the early part of 2015, while they worked for Gemstone, the managerial employees
launched Farm Fresh; they created their new company, engaged Mr. Ensley to recruit
customers for the new company, and shared with Mr. Ensley internal Gemstone
documents to help him pre-notify customers. The employment relationship between
the managerial employees and Gemstone weighs in favor of a duty to disclose. So

does the relative knowledge of the parties, the value of the particular fact, and Gemstone's and RCF's opportunity to ascertain the fact. Gemstone did not know that its managers, through an agreement with Mr. Ensley, were inviting Gemstone customers to send their business to Farm Fresh. The fact of that solicitation was very valuable to Gemstone; Gemstone would have wanted to know that its managers, through Mr. Ensley, were reaching out to Gemstone customers to encourage Gemstone customers to direct their business to Farm Fresh. While they worked at Gemstone, the managerial defendants had a duty to disclose this clandestine work to Gemstone. Jurors may conclude that the managerial defendants breached that duty and that the breach prevented Gemstone from intervening to prevent their managers from undermining Gemstone's and RCF's business. As noted above, although Gemstone may have difficulty establishing lost profits stemming from the managerial defendants' conduct over one or two months, a breach of a duty to disclose a material fact may support an award of nominal and punitive damages.

The claims for breach of loyalty and fraudulent suppression support a claim for civil conspiracy against the managerial defendants and Mr. Ensley. To succeed on a civil conspiracy claim under Alabama law, a plaintiff "must prove a concerted action by two or more people that achieved an unlawful purpose or a lawful end by unlawful means." *Luck v. Primus Auto. Fin. Servs., Inc.*, 763 So. 2d 243, 247 (Ala. 2000) (citing *McLemore v. Ford Motor Co.*, 628 So. 2d 548 (Ala. 1993)). "The gist

of an action alleging civil conspiracy is not the conspiracy itself but, rather, the wrong committed." *Hooper v. Columbus Reg'l Healthcare Sys., Inc.*, 956 So. 2d 1135, 1141 (Ala. 2006) (quoting *Keith v. Witt Auto Sales, Inc.*, 578 So. 2d 1269, 1274 (Ala. 1991)). "A civil conspiracy claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely assisted, encouraged, or planned the wrongdoer's acts." *DGB, LLC v. Hinds*, 55 So. 3d 218, 234 (Ala. 2010) (quoting 16 AM. JUR. 2D *Conspiracy* § 57 (2009)).

Here, the wrong is the managerial defendants' breach of their duties to Gemstone while they were Gemstone employees. Mr. Ensley participated in that breach by agreeing, for a fee, to do for the managerial defendants what they could not do themselves lawfully while they worked at Gemstone—contact Gemstone customers and encourage them to send business that would have been Gemstone's to Farm Fresh when Farm Fresh began its portioning operations. To be sure, after Mr. Ensley left Gemstone in November of 2014, he could compete with Gemstone, and he could provide consulting services to companies like Farm Fresh. But he could not take Gemstone data from Gemstone employees to build a customer base for the new company that the Gemstone managerial employees created while on Gemstone's payroll. Viewed in the light most favorable to Gemstone and RCF, Mr. Ensley assisted, encouraged, and helped plan the wrongdoers' unlawful acts, and he and the managerial defendants may be liable under Alabama law for their

conspiratorial conduct while the managerial defendants worked at Gemstone. *DGB, LLC*, 55 So. 3d at 234 ("We have previously concluded that the trial court erred in dismissing the investors' claims of fraudulent misrepresentation and fraudulent suppression as they relate to Hinds, Decatur, Kirkland, and Gulf Stream. The investors allege that those defendants agreed and worked together, with Jacobsen, to knowingly misrepresent information to and conceal material facts from the investors. The investors, therefore, have alleged that this combination of persons and entities—Hinds, Decatur, Kirkland, Gulf Stream, and Jacobsen—agreed and acted together to engage in unlawful conduct that injured the investors. Because the investors have alleged valid underlying causes of action and because acts of coconspirators are attributable to each other, see *Reindel*, supra, the investors have stated a claim of civil conspiracy upon which relief may be granted against each of these defendants.") (citing *Ex parte Reindel*, 963 So. 2d 614 (Ala. 2007)).

The Court considered the plaintiffs' RICO arguments and evidence before the Court ruled on the motions for summary judgment on the RICO claims. (Docs. 494, 525, 526). The Court will not revisit its analysis. Consequently, the Court denies as moot the defendants' motion to strike Exhibit C, new evidence submitted in support of reinstating Gemstone's § 1962(c) claim against Mr. Ensley and Gary Hill for the PWW/Galleria scheme. (Doc. 573).

## IV.

Accordingly, the Court vacates its order granting the defendants' motion for summary judgment on Gemstone's duty of loyalty claim and fraudulent suppression claim as those claims relate to the defendants' alleged solicitation of Gemstone customers.  The Court reinstates those claims against Mr. Welborn, Mr. Pass, Mr. Wester, Gary Hill, and Ms. Campos.  The Court reinstates a civil conspiracy claim against those defendants and Mr. Ensley based on the alleged unlawful solicitation of Gemstone customers while the managerial defendants worked for Gemstone.  The Court asks the Clerk to please TERM Doc. 565.

**DONE** and **ORDERED** this May 6, 2022.

**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE